**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JOSEPH TARSHISH,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-cv-00447-O-BP** |
| | § | |
| **KELLY LOEFFLER, Administrator** | § | |
| **of the U.S. Small Business** | § | |
| **Administration, in her Official Capacity,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion for Summary Judgment and Brief in Support that the U.S. Small Business Administration ("the SBA") filed on February 9, 2026 (ECF Nos. 78, 79), Response (ECF No. 85) that Joseph Tarshish filed on March 16, 2026, and Reply (ECF No. 85) that the SBA filed on March 30, 2026. After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that Chief United States District Judge Reed O'Connor **GRANT** the Motion for Summary Judgment (ECF No. 78) and **DISMISS** Tarshish's claims.

## I.      BACKGROUND

Tarshish filed this Title VII action on May 16, 2024, against the defendant, administrator of the SBA, who is now Kelly Loeffler. The SBA hired Tarshish as a temporary employee to assist during the COVID-19 pandemic on a six-month contract and "worked pursuant to short-term contract extensions to be extended only insofar as the employee's services remained necessary." ECF No. 86 at 6. He signed an employment contract that stated he would work seven days a week, up to fourteen hours a day, to assist with the economic disaster the pandemic caused. ECF No. 80-

3 at 137. Working weekends was mandatory for temporary employees. *Id.* As an observant Jew, Tarshish asked in November 2021 for an accommodation not to work from sundown Friday to sundown Saturday in observance of the sabbath. ECF No. 28 at 4. This meant Tarshish ended work earlier than his colleagues on Friday evenings and was exempt from work on Saturdays altogether. Although work on Saturdays was "mandatory," SBA granted his request and allowed Tarshish to work on Sundays instead. *Id.* It is undisputed that throughout his employment Tarshish never worked on Saturdays.

Tarshish later asked for Sundays off as well, to attend personal matters. ECF No. 80-2 at 247 (requesting Sundays off and citing lack of child care, inability to visit his mother, that his wife earned more than him and had to work Sundays so having her work was more financially advantageous, and that having Sundays off to spend time with his daughter was "rewarding" and made him more "refreshed" when he returned to work). If granted, this request would have resulted in Tarshish not working on any weekend days. The SBA alleges this schedule request prompted a review of Tarshish's production numbers. ECF No. 79 at 12.  That review showed that Tarshish's production numbers were among the lowest in his group. ECF No. 80-2 at 131. As the pandemic loan program started to wind down and the SBA reviewed the productivity numbers of its temporary employees, it decided to not extend the contracts of all five lowest producers on supervisor Cain's team, which included Tarshish. ECF No. 79 at 14.

Tarshish alleges that the SBA discriminated against him on account of his religion, a violation of the Civil Rights Act of 1964. *Id.* at 1. He further contends that the SBA terminated him in retaliation for his granted sabbath accommodation. *Id.* He seeks a declaration that the SBA violated his rights to be free of discrimination in the workplace, injunctive relief, compensatory

economic damages, damages for pain, suffering and emotional distress, prejudgment interest, attorney fees, and costs. *Id.* at 10.

## II.      LEGAL STANDARDS

### A.        Summary judgment standard

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Slaughter v. S. Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991). Disputes concerning material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue is 'material' if it involves a fact that might affect the outcome of the suit under the governing law." *Burgos v. Sw. Bell Tel. Co.*, 20 F.3d 633, 635 (5th Cir. 1994). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). "To satisfy this burden . . . if the crucial issue is one on which the opponent will bear the ultimate burden of proof at trial, [the movant may] demonstrate that the evidence in the record insufficiently supports an essential element of the opponent's claim or defense." *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991).

When a movant carries its initial burden, the burden then shifts to the nonmovant to show that the entry of summary judgment would be improper. *Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). Although the nonmovant may satisfy this burden by tendering depositions, affidavits, and other competent evidence, "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Douglass v. United*

*Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Merely colorable evidence or evidence not significantly probative will not defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 249-50. Furthermore, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. *Id.* at 252; *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994).

The Court must view summary judgment evidence in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). In addition, factual controversies are resolved in favor of the nonmovant but only when both parties have submitted evidence of contradictory facts, thus creating an actual controversy. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). In the absence of any proof, the Court does not assume that the nonmovant could or would prove the necessary facts. *Id.*

In making its determination on the motion, the Court looks at the full record including the pleadings, depositions, answers to interrogatories, admissions, and affidavits. Fed. R. Civ. P. 56(c); *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Such evidence need not be in an admissible form but must be capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). A party adverse to a motion for summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading." *Duplantis*, 948 F.2d at 190 (citing Fed. R. Civ. P. 56(e)). Instead, the response "by affidavits or as otherwise provided in [Rule 56(c)], must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 190-91.

Overall, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 242-43. The Court grants the movant's motion for summary judgment only if it meets its burden and the

nonmovant fails to make the requisite showing that a genuine issue exists as to any material fact. Fed. R. Civ. P. 56; *Duckett*, 950 F.2d at 276.

####    B.        Title VII discrimination

Title VII prohibits employers from discriminating against "any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . ." 42 U.S.C. § 2000e-2(a)(1). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." *Id.* § 2000e(b). The SBA is an "employer" under Title VII. *See Bates v. U.S. Small Bus. Admin.*, No. 3:01-cv-1614-D, 2004 WL 2599443, at *2 (N.D. Tex. Nov. 16, 2004) (*citing Pacheco v. Rice*, 966 F.2d 904, 905-06 (5th Cir. 1992)) (analyzing a plaintiff's claim against the SBA under Title VII and stating "[a] federal employee's remedy for claims of employment discrimination under Title VII is provided in 42 U.S.C. §§ 2000e-16(a)-(e).).

To show Title VII discrimination, the plaintiff must establish he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was . . . treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). The plaintiff bears the initial burden of establishing each element in his pleadings. *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 802 (1973). Only after the plaintiff has demonstrated each element in his pleadings does the burden shift to the opposing party. *Id.*

If the plaintiff successfully establishes a *prima facie* case of discrimination, "the burden then shifts to the employer to produce evidence that its actions were justified by a legitimate,

nondiscriminatory reason." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). Then, the plaintiff has the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant" were a mere pretext for discrimination. *Id.* (citation and internal quotation marks omitted). The plaintiff may alternatively prove that the employer's reasons were not the only reasons for its conduct, and the plaintiff's protected characteristic was another "motivating factor." *Id.* (citation omitted).

In addition to the duty not to discriminate, "Title VII [] requires employers to accommodate the religious observances or practices of applicants and employees." *Hebrew v. Tex. Dep't of Criminal Justice*, 80 F.4th 717, 721 (5th Cir. 2023) (cleaned up). "An employer has the statutory obligation to make reasonable accommodations for the religious observances of its employees, but is not required to incur undue hardship." *Weber v. Roadway Exp., Inc.*, 199 F.3d 270, 273 (5th Cir. 2000) (citing *Eversley v. MBank Dall.,* 843 F.2d 172, 175 (5th Cir. 1988)). The Fifth Circuit has stated:

> "[T]he rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice . . . a factor in employment decisions." *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015). That means an "employer violates Title VII" if the employee "requires an accommodation of [a] religious practice, and the employer's desire to avoid the prospective accommodation is a motivating factor in his decision" to terminate the employee. *Id.* at 773-74. Notably, this "motivating factor" standard is "broader than the typical but-for causation standard" and encompasses many claims of religious discrimination. *Nobach v. Woodland Vill. Nursing Ctr., Inc.*, 799 F.3d 374, 378 (5th Cir. 2015). An employer need not *even know* about the employee's religious practice; it violates Title VII so long as it takes the action "with the *motive* of avoiding the need for accommodating a religious practice." *Abercrombie*, 575 U.S. at 774 (emphasis in original). And motive is especially easy to infer where an employee has submitted a request for an accommodation or where the employer knows of the employee's religious practice. *See ibid.*; *Nobach*, 799 F.3d at 378.

*Hebrew*, 80 F.4th at 724. The elements of a failure to accommodate claim are (1) "that [plaintiff] had a bona fide religious belief that conflicted with an employment requirement"; (2) "that he informed the employer of his belief"; and (3) "that he was discharged for failing to comply with the conflicting employment requirement." *Antoine v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013).

### C.      Title VII retaliation

The antiretaliation provision of Title VII "prohibits an employer from 'discriminat[ing] against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Brown v. Wal-Mart Stores E., LP*, 969 F.3d 571, 576-77 (5th Cir. 2020) (quoting 42 U.S.C. § 2000e-3(a)).

A plaintiff may prove his retaliation claim "either by direct or circumstantial evidence." *McCoy*, 492 F.3d at 556. Direct evidence includes "statements or documents which show on [their] face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005). But it is the "rare" case that contains direct evidence of retaliation, and "a plaintiff ordinarily uses circumstantial evidence." *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994).

When a plaintiff bases his retaliation claim on circumstantial evidence, the Court invokes the burden-shifting analysis from *McDonnell Douglas Corp. See Brown*, 969 F.3d at 577. "Under this framework, the plaintiff has the burden to prove a prima facie case of retaliation by showing (1) [he] engaged in a protected activity; (2) [he] suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Id.*

(internal quotation marks omitted). To be sure, "Title VII retaliation claims must be proved according to traditional principles of but-for causation," *id.* (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)), but at the *prima facie* stage, "a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Id.*

Title VII prohibits retaliation with adverse employment actions against employees who engage in protected activity. 42 U.S.C. § 2000e-3(a). The practices Title VII views as unlawful consist of:

> (1) [] fail[ing] or refus[ing] to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) [] limit[ing], segregat[ing], or classify[ing] [] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

If the plaintiff establishes his *prima facie* case, only then does his employer have the burden of production to provide "a legitimate, non-discriminatory reason" for the adverse employment action. *Id.* If the employer meets this burden, then the plaintiff once again bears a burden—this time to prove that the proffered reason is merely pretextual. *Id.* This framework gives the plaintiff the "burden of proving that 'but for' the discriminatory purpose" the adverse employment action would not have occurred. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 608 (5th Cir. 2005). A plaintiff may establish pretext by showing a discriminatory motive "such as through evidence of disparate treatment, or that [his] employer's explanation is unworthy of credence." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).

### III.   ANALYSIS

When a party properly moves for summary judgment, "Rule 56 . . . saddles the non-movant with the duty to designate the specific facts in the record that create genuine issues precluding summary judgment." *Jones v. Sheehan, Young & Culp, PC*, 82 F.3d 1334, 1338 (5th Cir. 1996) (internal quotation marks omitted). The SBA is entitled to summary judgment on Tarshish's claims because Tarshish has not fulfilled this duty.

> **A.   Tarshish does not offer evidence supporting a *prima facie* case of Title VII discrimination.**

> 1.   <u>No showing of religious discrimination</u>

Because he is Jewish, Tarshish is indisputably a member of a protected class. And from his years of experience as a risk and compliance specialist in the financial services industry, he sufficiently demonstrates that he was qualified for his position at the SBA. ECF No. 28 at 8. He likewise shows that that the SBA did not renew his employment at the end of his temporary term. However, under the fourth *McCoy* factor, Tarshish does not offer evidence that SBA treated him less favorably than a similarly situated employee outside his protected class.

Tarshish alleges the SBA discriminated against him by reviewing his production numbers only after his supervisor received a complaint about Tarshish's weekend schedule. ECF No. 185 at 15. But Tarshish concedes the complaints concerned "his request not to work on Sundays," and admittedly, he did not lodge this request for religious reasons but instead for convenience and personal needs.

Tarshish continues that because the SBA permitted employees to work six-day weeks instead of just seven-day weeks, it normally would have granted a non-Jew's request for Sundays off for personal reasons but refused Tarshish's because it already had accommodated his request not to work on the Saturday Sabbath. In particular, he asserts that his accommodation for Saturdays

off must have played a role in his supervisor's decision to ultimately end his contract after he requested to have Sundays off as well. As Tarshish tells it, the only reason his Sunday request was not immediately approved must have been because his supervisor knew that 1) a new SBA policy was soon to make Saturday work compulsory and 2) Tarshish previously received religious accommodation. If not for her knowledge of both these facts, he contends his request for Sundays off would have been a "non-event" and summarily approved without review of his production because his supervisor would have been under the (false) impression that he could work on Saturday instead of Sunday. *Id.* But Tarshish provides no evidence to support these inferences.

Tarshish also offers no evidence that a similarly situated employee who did not work Saturdays, for whatever reason, was ever likewise granted a second weekend day off for personal reasons without the SBA's review of the employee's production numbers. Moreover, he does not offer evidence to show the new SBA policy revoked his accommodation or made him work on Saturday. Crucially, he does not present evidence to show that SBA reviewed his production numbers because he received religious accommodations.

Tarshish must offer evidence to show that the SBA discriminated against him because of his religious faith. And none of his assertions or series of logical inferences provide the Court with any evidentiary base showing he was treated less favorably than similarly situated employees outside of his class. Instead, the record shows the opposite, because the SBA did not renew the contracts of all five of the lowest performers on his team, regardless of their religion or previously requested accommodation. ECF No. 79 at 14. Because Tarshish does not present evidence to make out a Title VII discrimination claim, the SBA is entitled to enter summary judgment on this issue.

2.      No failure to accommodate

Under the first *Antoine* factor, it is undisputed that Tarshish has a bona fide religious belief that conflicted with an employment requirement, because his Jewish faith required him to abstain from work on Saturday, and his job required work that day. It also is undisputed that he informed his employer of his belief, and the SBA granted his accommodation to work on Sunday instead of Saturday. However, Tarshish does not explain how he meets *Antoine*'s third factor, that "he was discharged for failing to comply with the conflicting employment requirement." 713 F.3d at 831. The record shows that the SBA granted Tarshish the religious accommodation he requested and allowed him to abstain from work on Saturday. He points to no evidence that shows that the SBA terminated his employment because he did not comply with the conflicting employment requirement of working on Saturdays. And while he claims the "facts" he presents sustain his claims, he does not explain how or provide evidence to support these conclusory assertions. Thus, summary judgment for the SBA is proper on Tarshish's failure to accommodate claim.

3.      No genuine issue of fact for trial on Title VII discrimination

Tarshish argues that because the Fifth Circuit applies the test from *Abercrombie*, his discrimination claim survives summary judgment. ECF No. 85 at 17 (citing the dissenting opinion in *Abercrombie* explaining that *McDonnell Douglas* requires "proving facts" and at the summary judgment stage a plaintiff need only present sufficient evidence to create a genuine dispute as to whether discrimination occurred.). Yet Tarshish offers no evidence to create a genuine dispute for his claims of religious discrimination or failure to accommodate.

Tarshish asserts that even if *McDonnell Douglas* applied, his claim survives because the testimony of his supervisor is not credible and therefore he showed that she pre-emptively fired him so she would not have to provide the Sabbath accommodation. ECF No. 85 at 19. But evidence

11

does not support this conjecture. Tarshish has not presented evidence under the *Abercrombie* standard to raise a fact issue on whether his religious accommodation needs were a motivating factor in the SBA's decision not to renew his contract. Even applying Tarshish's preferred standard and noting his arguments, he does not show that there is a genuine dispute for trial as to whether the SBA discriminated against him because of his religion.

  **B.  Tarshish does not establish a *prima facie* case of Title VII retaliation.**

  In support of his Title VII retaliation claim, Tarshish argues that his requests for Saturday and Sunday accommodations was a protected activity under Title VII and the SBA's non-renewal of his contract was an adverse employment action. He seeks to establish causation through temporal proximity of his accommodation and the non-renewal of his contract. He concludes that his religious accommodation request was the "true motivator" of his termination, and the production review was merely pretextual. But Tarshish offers no evidence showing that his supervisor knew of his accommodation. The summary judgment evidence shows that Tarshish's supervisor, Tami Ralstin, supervised five thousand employees during the pandemic. ECF No. 86 at 3. Nevertheless, Tarshish infers that because his need for accommodations must have been forwarded up the chain of command, and Ralstin received such requests, Ralstin 1) knew of his religious request, 2) remembered the information, and 3) used the information in deciding not to renew Tarshish's temporary employment. This tower of inferences collapses for lack of summary judgment evidence.

  Tarshish argues that causation exists because the temporal proximity of his accommodation requests and non-renewal is "exceptionally close." ECF No. 85 at 22. But he does not offer evidence to show when Ralstin learned of his accommodation request. He only infers that she must have known about it and remembered it when the SBA did not renew his contract. Therefore, he states as a conclusion there was close temporal proximity without providing facts supporting the

assertion. And merely stating causation exists is not enough. The inference that Tarshish encourages the Court to make is hardly "inescapable" as he claims. *Id.* There is no summary judgment evidence that Ralstin knew or acted on the information of Tarshish's request for accommodation, and in fact, the evidence suggests the opposite. Although Tarshish asks the Court to reject the evidence as unreliable, he offers no alternative evidence to support his conclusory allegations. Accordingly, the Court should grant the SBA's Motion as to his retaliation claim.

C.    **Even if Tarshish had established a *prima facie* case for discrimination or retaliation, the SBA provided legitimate, non-discriminatory reasons for his termination.**

The SBA argues that it did not renew Tarshish's contract not because of discriminatory reasons but because of Tarshish's lower production and performance numbers, constituting a legitimate, non-discriminatory reason. ECF No. 79 at 22. The SBA also emphasizes it hired Tarshish for a temporary position during the COVID-19 pandemic and that it did not renew many temporary employment contracts as the pandemic wound down and the extra temporary staff were no longer needed. *Id.* The SBA identifies specific examples in the record to substantiate their assertion. These include evidence of Tarshish's low production numbers and evidence that the SBA did not renew the contracts of all five of the lowest performing employees on his team. ECF No. 80-2 at 131, ECF No. 79 at 14. Accordingly, the SBA has met its burden to show there were legitimate, non-discriminatory reasons for non-renewal of Tarshish's contract.

D.    **Tarshish did not show that the SBA's legitimate reasons were merely pretext or that a discriminatory purpose was a motivating factor in the non-renewal.**

If Tarshish had established a prima facie case, the Court would consider the final step of the *McDonnell Douglas* burden shifting analysis to see if the legitimate reasons the SBA provided were merely pretextual. Tarshish argues the SBA's basis of poor production numbers for his

termination is pretextual because the SBA only reviewed his performance metrics after he had requested accommodation for his religious practices.

For purposes of his Motion for Summary Judgment, Tarshish has not met his "burden of proving that 'but for' the discriminatory purpose" the adverse employed action would not have occurred," or that it was a motivating factor. *Septimus*, 399 F.3d at 608. First, Tarshish's employment contract provides that the SBA bases extension of contract term "on several factors, including workload, performance, conduct, and attendance." ECF No. 80-3 at 137. Second, the summary judgment evidence shows that the SBA did not extend the contracts of several other low-performing temporary employees who did not request or receive religious accommodations. ECF No. 79 at 14. Therefore, it is not plausible that the SBA used performance as a pretext, when it is undisputed that the SBA intended the position that Tarshish held to be short-term, and the SBA did not renew the other four low performing temporary employees on Tarshish's team. *Id.* Tarshish likewise offers no evidence to lead the Court to conclude that a discriminatory purpose was a motivating factor of the SBA's actions. And Tarshish also provides no evidence of disparate treatment between himself and his peers who did not receive religious accommodations.

Tarshish also does not show that the SBA's explanation of his employment non-renewal may be "unworthy of credence." *Haire*, 719 F.3d at 363. He provides no evidence and does not contend that the SBA's "poor performance" reasoning is at all inconsistent with his employment record. While he frequently reiterates his significant industry experience, he does not contest that he was a low performer under the SBA's performance metrics. Tarshish has not met his burden to raise a genuine dispute of material fact that the SBA's actions were pretextual or that a discriminatory reason was a motivating factor of the SBA's action. Therefore, summary judgment

still would be appropriate on his claims even if he had established a *prime facie* case of discrimination.

## IV.   CONCLUSION

If there are facts that can defeat summary judgment, they are for the non-movant to identify and offer for the Court's consideration. Tarshish has not done so. Consequently, the undersigned **RECOMMENDS** that Chief Judge O'Connor **GRANT** the SBA's Motion for Summary Judgment (ECF No. 78) and **DISMISS** Tarshish's claims.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on April 13, 2026.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

15